# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LUIS CARDENAS-ORNELAS,

    Plaintiff

v.

WICKHAM, et al.,

    Defendants

Case No.: 2:21-cv-00030-APG-VCF

**Order**

Plaintiff Luis Cardenas-Ornelas (Plaintiff) is in the custody of the Nevada Department of Corrections (NDOC). He has submitted a civil rights complaint under 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. ECF Nos. 1-1, 11. Plaintiff also has filed a motion for temporary restraining order and preliminary injunction. ECF Nos. 3, 4. I will temporarily defer the matter of the filing fee. I now screen Plaintiff's complaint. I will address his motions by separate order.

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the

Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires federal courts to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

Plaintiff asserts six counts and seeks injunctive relief, declaratory relief, and monetary damages. ECF No. 1-1 at 33, 37. He sues multiple defendants for events that allegedly took place while he was incarcerated at High Desert State Prison. Plaintiff sues Deputy Director Wickham, Director Daniels, Warden Calvin Johnson, Associate Warden Piccinini, Associate

Warden Struck, A. Alcock, correctional officer Johnson, Lt. Owens, Graham, corrections officer Brightwell, Lt. Portello, and Julio Calderin.

Plaintiff also lists John Does 1-100 and John Does A-E as defendants. A complaint cannot be served on an unnamed defendant and a case therefore cannot proceed against an unnamed defendant. Furthermore, as a general rule, the use of "Doe" pleading to identify unnamed defendants is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). I recognize that there are situations "where the identity of alleged defendants will not be known prior to the filing of a complaint." *See id.* To the extent possible, a plaintiff should try to identify the names of each defendant. At a minimum, if a plaintiff files a complaint against unnamed "Does," the plaintiff must distinguish each Doe separately by description or number. It is not sufficient to allege Doe defendants as a group. The plaintiff must allege in the complaint what each separately identified Doe defendant did to violate his rights. The court must be able to discern which specific unnamed person allegedly violated a plaintiff's rights in a particular claim by engaging in specific behavior. Thus, a plaintiff must separately describe each individual Doe and describe the role each of them played violating his rights, alleging facts sufficient to state a colorable claim against each specific Doe defendant. If a plaintiff adequately describes a particular Doe defendant so that it appears that a particular person readily can be identified through discovery and if the plaintiff alleges specific acts by that particular Doe defendant that states a colorable claim against that particular Doe defendant, the court may later permit the plaintiff to engage in discovery to attempt to learn the name of that particular Doe defendant and amend the complaint to state a colorable claim against that person using the person's real name. *Id.* at 642-43. Plaintiff clearly has not done that here.

////

### A. Count One – Religion Claims

Count One alleges the following: Plaintiff is an inmate at HDSP. ECF No. 1-1 at 4. On about May 20, 2020, Plaintiff contacted defendant Calderin, asking why he was being denied access to the chapel while other inmates were being permitted access. Plaintiff did not receive a response. Plaintiff then spoke to defendant Portello regarding his inability to access the chapel. Portello informed Plaintiff that Governor Sisolak ordered the entire NDOC locked down and that no inmates had access to the chapel due to COVID-19 restrictions. Portello said that HDSP would open back up when the casinos opened. Plaintiff pointed out this conversation was taking place at a time when he was working in an indoor warehouse with over 120 inmates who were working within two feet of each other. Portello did not respond.

On June 12, 2020, Plaintiff filed an informal grievance challenging the lockdown and stated that he was on lockdown except for the eight or nine hours per day that he was working in a crowded warehouse with other inmates. Defendant Struck denied the informal grievance, stating that the associate warden, warden, and director had set up the measures to protect the health and safety of all inmates and that all measure were within the guidance of a Nevada statute. Plaintiff filed a first level grievance, asserting that it was unconstitutional to deny him access to chapel while requiring him to work closely indoors with 130 people. Warden Johnson responded by explaining that the director has the responsibility for protecting the safety of inmates and stating that the NDOC had not placed any institution on lockdown but had quarantined in certain circumstances in an effort to adhere to important guidelines from the Center for Disease Control and Prevention.

Because of this response, Plaintiff filed another informal grievance, which Piccinini denied as improper because Plaintiff already had filed a first level grievance. Plaintiff then filed

a second-level grievance, which Piccinini rejected as improper based on Plaintiff's failure to attach a particular form. Plaintiff then again filed a second-level grievance. Defendant Wickham denied that grievance, stating that the grievances had been answered correctly at the informal and first levels, that chapel services were suspended at HDSP in an attempt to combat the spread of COVID-19, and that there are differences in opportunities between different institutions because HDSP is an intake facility and had a higher infection rate due to offenders coming through intake from the Clark County Detention Center.

Plaintiff asserts that defendant Warden Johnson failed to explain how allowing Plaintiff to access the chapel is a health and safety risk, that defendant Johnson lied in his grievance response because the NDOC did not implement any of the programs or safety measures described by Warden Johnson, that defendants are relying on COVID as an excuse to violate Plaintiff's right to religious exercise, and that the actions related to quarantine were to prevent inmates from attending chapel.

Plaintiff also asserts that, in October of 2020, he and other inmates witnessed Jewish inmates and select inmates of Christian groups returning from chapel services. Defendants Calderin, Warden Johnson, Struck, Piccinini, Wickham, and the Director have allowed some inmates access to the chapel while denying Plaintiff and the majority of inmates access to the chapel. Plaintiff also asserts that Wickham posited that HDSP is an intake yard and thus at more risk than other facilities, but Northern Nevada Correctional Center also is an intake yard and more at risk than other facilities but was not quarantined and its inmates were not denied access to chapel services. Plaintiff concludes that the fact that defendants believed that it was safe enough to allow 130 inmates to work in the warehouse and that there was no ban on all chapel

access at other prisons shows that a total ban on chapel services at HDSP was not "the least restrictive means."

Plaintiff concludes that Daniels, Wickham, Warden Johnson, Struck, Piccinini, Portello, and Calderin implemented the ban on Plaintiff's right to access the chapel, violating his "First Amendment rights to freedom of religion equal protection," his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), and "applicable Nevada constitutional violations." ECF No. 1-1 at 3, 10.

### 1. First Amendment

Inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "[L]imitations on [an inmate's] exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* To raise a viable claim under the Free Exercise Clause, a prisoner initially must make a showing that the defendant has substantially burdened a sincerely held religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If such a belief is substantially burdened, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). It is not until summary judgment that courts evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness" test set forth in *Turner*[1], 482 U.S. at 89-91. *See*

---

[1] Under *Turner*, (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) where "there are alternative means of exercising the right that remain open to prison inmates . . . courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation"; (3) if "accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials"; and (4) the absence of "ready alternatives" to a

*Shabazz*, 482 U.S. at 349; *Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir. 2011) (analyzing the *Turner* factors applied during summary judgment).

Plaintiff fails to state a colorable First Amendment free exercise of religion claim. He does not allege any sincerely held religious belief at all. He also does not allege facts sufficient to show that any defendant has substantially burdened any such belief.

Article 1, section 4 of the Nevada Constitution is co-extensive with the First Amendment's provision for free exercise of religion. *Martinez v. Clark Cty., Nev.*, 846 F. Supp. 2d 1131, 1145 (D. Nev. 2012). Therefore, for the same reasons that Plaintiff fails to state a colorable First Amendment claim, he fails to state a colorable claim under the Nevada Constitution.

I therefore dismiss these free exercise of religions claims without prejudice and with leave to amend. If Plaintiff chooses to amend these claims, he must allege facts sufficient to show that he has a sincerely held religious belief. In addition, for each defendant he must allege facts sufficient to show that the particular defendant substantially burdened those religious beliefs.

### 2. RLUIPA

The RLUIPA governs religious exercise by institutionalized persons. It provides in relevant part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental

particular prison regulation is evidence that it is reasonable and not "an exaggerated response to prison concerns." *Turner*, 482 U.S. at 89–90 (citations and internal quotations omitted).

8

interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Thus, a plaintiff has the initial burden of proving that the prison official's actions implicated the plaintiff's religious exercise and that the prison official's actions substantially burdened that exercise of religion. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). If the plaintiff makes that prima facie showing, the burden shifts to the defendant to prove that its actions are in furtherance of a compelling governmental interest and are the least restrictive means of furthering that interest. *Id.* at 863.

Plaintiff fails to state a RLUIPA claim because he does not allege facts sufficient to show his religious beliefs and that any defendant substantially burdened Plaintiff's exercise of his religious beliefs. If Plaintiff chooses to amend this claim, for each defendant he must allege facts sufficient to show that the particular defendant substantially burdened Plaintiff's exercise of his religious beliefs.

### 3. Equal Protection

To state an equal protection claim, a plaintiff must allege facts demonstrating that a defendant acted with the intent and purpose to discriminate against him based upon membership in a protected class (such as based on his religion), deliberately treating the plaintiff differently from how that defendant treated similarly situated persons. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Thus, the Equal Protection Clause protects prisoners from intentional discrimination based on their religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds* by *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). But conclusory allegations of motive are insufficient; specific, non-conclusory factual allegations are required. *Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

Furthermore, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

1989).  Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead facts

sufficient to show that each Government-official defendant, through the official's own individual

actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Thus, a

supervisor's knowledge of a subordinate's or co-worker's discrimination is not sufficient to show

discrimination by the supervisor. *Id.*  To state a claim for a supervisor's discrimination, a

plaintiff must go beyond pleading facts showing that the defendant supervisor knew of and

acquiesced in discrimination and its consequences; the plaintiff must allege facts sufficient to

show that the supervisor took action or inaction for the purpose of discriminating on the basis of

race, religion, or national origin. *Id.* at 676-77.  The defendant must undertake the course of

action because of, not in spite of, the adverse effects on an identifiable group.

Plaintiff fails to state a colorable equal protection claim.  He has not alleged what his

religion is and has not alleged facts sufficient to show that any defendant discriminated against

him because of his religion and treated Plaintiff differently from how that defendant treated a

similarly situated person.

Nevada courts "have interpreted the standard of the Equal Protection Clause of

the Nevada Constitution to be the same as the federal standard . . . ." *Armijo v. State,* 904 P.2d

1028, 1029 (Nev. 1995).  For the same reason that Plaintiff fails to state a colorable federal equal

protection claim, he fails to state a colorable Nevada equal protection claim.

I therefore dismiss the federal and state equal protection claims without prejudice and

with leave to amend.  If Plaintiff chooses to amend this claim, he must allege facts sufficient to

show that a particular defendant deliberately and intentionally treated Plaintiff differently from

how that particular defendant treated other similarly situated prisoners and that the treatment was

because of Plaintiff's religion.  Conclusory allegations will not be sufficient.

## B. Count Two

Count Two alleges the following: On March 18, 2020, defendants Daniels, Wickham, Warden Johnson, Piccinini, Struck, and Portello decided to quarantine Unit 9 due to possible COVID-19 contamination. ECF No. 1-1 at 12. This lasted until April 27, 2020, and during this time Plaintiff was confined to his cell and not permitted to work. On April 27, 2020, Unit 9 workers were permitted to return to work, but Plaintiff was denied yard and exercise due to the "pretense of health and safety concerns." "The defendants" required Plaintiff to go to work, where there were at least 130 inmates working together in a warehouse where social distancing is impossible. Plaintiff had multiple conversations with Portello and Owens regarding this issue. They stated that the entire NDOC was on lockdown and that the ban on yard was due to COVID-19, but neither defendant could explain why outdoor exercise was a risk but working indoors was not. Plaintiff also wrote to Warden Johnson, but he continued to be denied yard. On June 12, 2020, Plaintiff filed an informal grievance about being denied yard and being confined to his cell for at least 23 hours per day. Struck denied the grievance without addressing the issue. Plaintiff filed his first level grievance on August 6, 2020 raising the same issues. Warden Johnson denied his grievance, stating that safety measures had been put in place to address COVID-19. Other safety measures have not been put in place, and Portello has told Plaintiff that Warden Johnson does not like Protective Segregation inmates.

Plaintiff filed another informal grievance, which was denied by Piccinini. Plaintiff then filed a second level grievance, which Piccinini denied. Plaintiff filed another second level grievance, which was denied by Wickham on the grounds of health and safety.

Since March 18, 2020, Plaintiff has been sent to work two-to-four days per week almost every week, but he has been provided a total of eight hours of yard time. During this time,

"they" were permitting every other yard within the NDOC to continue receiving exercise, including General Population, Administrative Segregation, and Disciplinary Segregation at HDSP.

Plaintiff concludes that Daniels, Wickham, Warden Johnson, Struck, Piccinini, Owens, and Portello knowingly denied him yard time and that the denial of yard and exercise[2] was a violation of his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to equal protection, along with "applicable Nevada constitutional rights."[3] *Id.* at 11, 17.

### 1. *Cruel and Unusual Punishment*

To successfully challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

The objective prong requires a showing that the deprivation was sufficiently serious to form the basis for an Eighth Amendment violation. *Id.* "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). When determining whether the conditions of confinement meet the objective prong, the court must analyze each condition to determine whether that specific condition violates the Eighth Amendment. *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986). When considering

---

[2] Count Two includes allegations referring to other issues besides yard time, but those allegations are repeated elsewhere and appear to be extraneous allegations that are not the basis of the claims brought in Count Two.

[3] Count Two also appears to include yard-related allegations concerning John Does 1-100 that are duplicative of some of the allegations and claims in Count Four. I therefore will not address those issues in connection with Count Two and instead will address them in connection with Count Four. It is improper to include claims that are duplicative of each other.

the conditions of confinement, a court also should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune,* 413 F.3d 1036, 1042 (9th Cir. 2005).

The Ninth Circuit has recognized that prolonged deprivation of outdoor exercise to inmates confined to continuous and long-term segregation meets the objective prong of the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083,1089 (9th Cir. 1996). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that denial of exercise for 21 days was not a violation of Eighth Amendment).

As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to an inmate's health and safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id*. at 837. In the context of a *current* risk of *future* harm, the plaintiff must allege facts sufficient to show an objectively intolerable risk of harm. *Farmer*, 511 U.S. at 846; *see also Helling v. McKinney*, 509 U.S. 25, 31, 33, 35 (1993).

Mere negligence is insufficient to show a violation of the Eighth Amendment. *Farmer*, 511 U.S. at 835-36. Even gross negligence is insufficient to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It is not enough that the prison official objectively should have recognized the risk but did not. *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001).

Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844; *see also Peralta v. Dillard*, 744 F.3d 1076, 1084-85 (9th Cir. 2014) (en banc) (recognizing that what is reasonable depends on the circumstances, including the defendant's authority, capabilities, and resources).

Furthermore, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Farmer*, 511 U.S. at 844; *see also Peralta v. Dillard*, 744 F.3d 1076, 1084-85 (9th Cir. 2014) (en banc) (recognizing that what is reasonable depends on the circumstances, including the defendant's authority, capabilities, and resources). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, to state a colorable Eighth Amendment claim, a plaintiff must allege facts sufficient to show that each particular defendant was deliberately indifferent; a defendant does not become liable for an Eighth Amendment violation merely because a co-worker, supervisor, or subordinate was deliberately indifferent. *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).

Here, the complaint alleges facts sufficient to meet the objective prong, as it alleges that Plaintiff has been deprived of almost all outdoor exercise for a year. In addition, the complaint alleges facts that might be sufficient to show that Portello, Owens, Warden Johnson, Struck, and Piccinini were deliberately indifferent by intentionally and unnecessarily denying Plaintiff yard time. Therefore, this Eighth Amendment claim may proceed against Portello, Owens, Warden Johnson, Struck, and Piccinini.

Courts apply the same legal standards to the cruel and unusual punishment provision included in Article 1, Section 6 of the Nevada Constitution as they do to the cruel and unusual punishment provision of the Eighth Amendment of the United States Constitution. *Naovarath v. State*, 105 Nev. 525, 532 n.6 (1989); *Hutchins v. Nevada Dep't of Corr.*, No. 3:10-cv-00369-LRH, 2011 WL 7575728, at *4, n.3 (D. Nev. Oct. 5, 2011). So for the same reason that the complaint states a colorable Eighth Amendment claim based on the denial of yard time, it also states a colorable claim for violation of Article 1, Section 6 of the Nevada Constitution. Therefore, this state constitutional claim may proceed against Portello, Owens, Warden Johnson, Struck, and Piccinini.

2. ***Equal Protection***

When analyzing a discrimination claim under the Fourteenth Amendment, the courts "must first determine the appropriate level of scrutiny to be applied. If the rule disadvantages a suspect class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class or fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990). A right is fundamental right if it is guaranteed by the Constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–34 (1973). The plaintiff must allege facts sufficient to show that each particular defendant, through the official's own individual actions, has discriminated against him in violation of the Equal Protection Clause, intentionally and deliberately treating that plaintiff differently from how the defendant treats others who are similarly situated. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009).

Liberally construed, the complaint alleges that there is no need for the long-term denial of yard time and that COVID-19 is merely a baseless pretext for denying Plaintiff his right to yard

time.  In addition, liberally construed, Plaintiff alleges that Portello, Owens, Warden Johnson,

Struck, and Piccinini have provided many other inmates at HDSP with yard time but they have

deprived Plaintiff of almost all yard time.  Liberally construing the complaint for purposes of

screening only, this is sufficient to state a colorable Fourteenth Amendment equal protection

claim, and this claim may proceed against Portello, Owens, Warden Johnson, Struck, and

Piccinini.

Nevada courts "have interpreted the standard of the Equal Protection Clause of

the Nevada Constitution to be the same as the federal standard . . . ." *Armijo v. State,* 904 P.2d

1028, 1029 (Nev. 1995).  Therefore, for the same reasons that the Fourteenth Amendment equal

claim may proceed, the Nevada constitutional equal protection claim may proceed against

Portello, Owens, Warden Johnson, Struck, and Piccinini.

**C.  Count Three**

Count Three alleges the following: On about March 18, 2020, defendants Daniels,

Wickham, Warden Johnson, Piccinini, and Struck locked down HDSP on the pretense of health

and safety. ECF No. 1-1 at 18.  On April 18, 2020, Plaintiff and other inmates were required to

return to work, but Plaintiff "was not permitted to access the library."  Plaintiff complained about

this issue in person to Owens and Portello, who did not look into the issue or resolve it.  Plaintiff

wrote to defendant Graham and asked why he was not being allowed to visit the law library and

requested to be allowed access to the library.  On about June 12, 2020, Plaintiff filed an informal

grievance complaining of not being able to attend the library "or have access to it."  Struck

denied his grievance, alluding to health and safety concerns.  Plaintiff filed a first level grievance

challenging the denial of all access to the law library, and that grievance was denied by Warden

Johnson.  Warden Johnson said that no institution has been placed on lockdown but instead there

had been a quarantine due to COVID-19 and that officers (John Does A-E) were posted in the law library Monday through Friday and instructed to visit each unit per day. Plaintiff disagreed with Warden Johnson's response. Plaintiff filed a second level grievance, which Piccinini denied. Plaintiff filed another second level grievance, which Wickham denied.

Plaintiff alleges that he has not had access to request forms to request case law and that Graham did not respond to his request for case law or to his kite informing her that he was not receiving case law. Plaintiff has submitted to the law library approximately 20-25 requests for case law, but he has not received any of it. Plaintiff is supposed to send out legal mail from the law library but cannot do that and has to use other methods and has no way to send e-file requests or copy requests to the law library. Officers were not visiting the units daily or obtaining requests.

Plaintiff asserts that the defendants' actions have caused "actual injury." He asserts that the following constitutes "actual injury": 1) Plaintiff lost grievances that he would have won if he had been able to research rules and regulations; 2) Because Plaintiff was unable to research the rules and regulations and lost his grievances as a result, he has had to write, file, and pay for this litigation; and 3) Plaintiff has had to rewrite the complaint filed in this action because "defendants" lost it.

Plaintiff concludes that his First Amendment and Fourteenth Amendment rights to access to the law library "as well as all applicable Nevada constitutional rights" were violated by defendants when they implemented a lockdown under the pretense of health and safety, preventing all meaningful access to the library.

There is no freestanding constitutional right to a law library or legal assistance. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Prisoners have a constitutional right of access to the courts. *Id.*

This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id*. at 356-57. This right does not require states to turn prisoners into litigating machines or provide ideal access to the courts. *Id*. at 355. Furthermore, prison officials have no affirmative duty to help a prisoner litigate his claims once he has filed them. *Id*. at 354; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995), *as amended* (May 23, 1995). However, prisoners have the right to litigate, without active interference, claims that have a reasonable basis in law and fact. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103-04 (9th Cir. 2011), *overruled on other grounds as stated in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis*, 518 U.S. at 349. An "actual injury" is actual prejudice with respect to contemplated or existing litigation. *Id*. at 348. Thus, as the Supreme Court has made clear, because there is not "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar." *See Lewis*, 518 U.S. at 351. The alleged deficiency must *cause* the plaintiff an injury. *Id*. at 348.

Moreover, the remedy, including injunctive relief, must be limited to the inadequacies that *caused* the plaintiff's injury and may not extend to remedy all inadequacies. *Id*. at 357. In addition, in access to the courts cases where a plaintiff is alleging that systemic official action is frustrating him from filing suits at the present time, an access to the courts claim exists in

order to put the plaintiff in a position to be able to bring a separate action for relief on the underlying constitutional claim once the frustrating condition has been removed; the purpose of an access to the courts claim is not to provide damages for claims that can be brought in another action. *Christopher v. Harbury*, 536 U.S. 403, 413, 416 (2002).

The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Lewis*, 518 at 353 n.3, 354-55. It is not enough for a plaintiff merely to conclude that the allegedly frustrated legal claim is non-frivolous; whether the case involves past claims or forward-looking claims to remove roadblocks to initiating litigation, the underlying cause of action is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. *Christopher*, 536 U.S. at 415. Conclusory or vague allegations are insufficient; the "complaint must state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)[4], just as if it were being independently pursued" in a separate action and a similar plain statement must describe the lost remedy and any remedy currently legally available for the access to the courts claim that is available only through an access to the courts claim. *Id.* at 417-18.

Furthermore, delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362.

Plaintiff fails to state a colorable access to the courts claim. Plaintiff has not alleged facts sufficient to adequately allege an actual injury and a lost remedy, and he has not alleged an available remedy that is available only through the access to the courts claim. Plaintiff's

---

[4] Rule 8(a) requires that a complaint allege a short and plain statement of facts sufficient to show that the plaintiff is entitled to relief.

conclusion that he has suffered an actual injury is insufficient. Plaintiff has not alleged facts that could show injury to a non-frivolous criminal appeal, habeas petition, or civil rights action. The constitution protects access to the *courts* under certain circumstances. It does not guarantee a right to research pertaining to the *grievance system*, and prisoners have no due process right to the handling of grievances in any particular manner. *See Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest because there is no legitimate claim of entitlement to a grievance procedure); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (recognizing that there is no liberty interest in the processing of appeals because prisoners are not entitled to a specific grievance process); *Patterson v. Kane*, No. 06-15781, 2006 WL 3698654, at *1 (9th Cir. Dec. 13, 2006) (recognizing that mere denial of a grievance does not rise to the level of a constitutional violation); *Taek Sang Yoon v. Arnett*, 385 F. App'x 666, 668 (9th Cir. 2010) (rejecting due process claim based on failure to respond to grievance).

Also, allegedly improper conduct does not become an access to the courts violation merely because officials take action that leads a prisoner to pursue litigation. Plaintiff does not and cannot state an access to the courts claim by alleging that, because he was unable to research the rules and regulations and therefore lost his grievances, he has had to write, file, and pay for this litigation.

In addition, it is readily apparent that, even if Plaintiff had alleged that a particular defendant lost[5] an earlier copy of the complaint that is the subject of that action, Plaintiff has not

---

[5] Plaintiff also cannot state a due process claim based on lost property because negligence and mistake cannot be the basis of a due process claim. *See Daniels v. Williams*, 474 U.S. 327 (1986).

1 alleged an injury to the litigation and a lost remedy that is currently available only through an

2 access to the courts claim as the court is currently screening Plaintiff's claims in this order.

3 Therefore, because the alleged injuries do not and cannot constitute cognizable injuries

4 and remedies for purposes of an access to the courts claim, I dismiss Count 3 with prejudice, as

5 amendment would be futile. Plaintiff may not pursue these access to the courts claims.[6]

6 **D. Count Four**

7 Count Four alleges the following: As early as March 18, 2020, Warden Johnson,

8 Piccinini, and Struck were aware that COVID-19 posed a substantial risk to the health and safety

9 of inmates within the NDOC. By March 26, 2020, Daniels released a memo noting that the

10 NDOC had its first positive test for COVID-19 and Warden Johnson directed operations outlined

11 in the agency contingency plan to prevent the spread of COVID-19. Daniels, Warden Johnson,

12 Piccinini, and Struck then implemented a set of protocols, including requiring employees to self-

13 quarantine at home, HDSP inmates to isolate in their cells, NDOC medical staff to observe

14 inmates and staff for signs of the virus, and sanitation teams to clean surfaces at NDOC facilities.

15 Despite this memo and the protocols, Does 1-100 did not take steps to quarantine at

16 home, wear masks, and socially distance. They knowingly violated NDOC protocols and CDC

17 Guidelines, causing them to become infected, and they then infected some inmates, causing the

18 lockdowns that resulted in Plaintiff being denied access to the law library, chapel, and yard.

19 John Does 1-100 decided to work at a facility, knowing that they had put themselves at risk and

20 that the facility would lock down due to the positive test. According to an administrative

21

22 ───────────────

[6] To the extent Plaintiff is attempting to bring access to the courts claims under the Nevada

23 Constitution, I dismiss those claims for the same reason. *Cf. Peck v. Zipf*, 133 Nev. 890, 898–99, 407 P.3d 775, 782 (2017) (applying the same law to both the federal and state access to the courts claims).

regulation, each NDOC employee "is to know and uphold all department rules, regulations, and protocols." Daniels, Warden Johnson, Piccinini, and Struck then "failed to ensure that the protocols put in place, such as medical observations, testing, and temperature checks, were followed." They implemented a policy that required officers who had reported coming into contact with those who had COVID-19 and may have contracted COVID-19 to continue to work until these individuals tested positive. These defendants had a "duty to protect" Plaintiff and to ensure that his constitutional rights were upheld. This put Plaintiff more at risk to contract COVID or "be denied constitutional protections (law library, religious, and exercise)."

Plaintiff concludes that these defendants acted with deliberate indifference, which resulted in Plaintiff being denied access to yard, chapel, and the law library, thus violating Plaintiff's First Amendment, Fourteenth Amendment, and Eighth Amendment rights.

To the extent Plaintiff is alleging that any defendant violated Plaintiff's right to access the yard, chapel, or law library merely because their actions ultimately led to unconstitutional conduct by *others* to deny Plaintiff access to the chapel, library, or yard, Plaintiff fails to state a colorable access to the courts claim or free exercise of religion claim or Eighth Amendment claim. I dismiss with prejudice any such claim. As discussed above, to be held liable in a § 1983 claim, the particular defendant must have violated the Plaintiff's rights.

However, Plaintiff also brings an Eighth Amendment claim for the failure to protect Plaintiff from COVID-19. Plaintiff alleges that Daniels, Warden Johnson, Piccinini, and Struck implemented a policy that requires officers who have reported coming into contact with those who had COVID-19 and may have COVID-19 to continue working until these individuals test positive, placing Plaintiff at greater risk for contracting COVID-19. Although Plaintiff does not allege that he has contracted COVID-19, a prisoner who is not currently suffering from serious

medical needs may state a claim under the Eighth Amendment by alleging facts sufficient to show that defendants currently are, with deliberate indifference, exposing him to conditions that pose an unreasonable risk of serious damage to his future health." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). Plaintiff states such an Eighth Amendment claim against Daniels, Warden Johnson, Piccinini, and Struck. The complaint alleges that Plaintiff is being exposed to an objectively intolerable risk because correctional officers where he lives are being permitted to come to work even if they have been exposed to COVID-19. Plaintiff also adequately alleges deliberate indifference by these defendants as they are the ones who allegedly implemented the policy. Therefore, this portion of Count Four may proceed against Daniels, Warden Johnson, Piccinini, and Struck.

However, to the extent Plaintiff alleges that Daniels, Warden Johnson, Piccinini, and Struck failed to ensure that the protocols put in place were followed, Plaintiff fails to state a colorable Eighth Amendment claim. Plaintiff does not allege facts sufficient to show deliberate indifference by any of these defendants and Plaintiff has not alleged that they caused him to contract COVID-19. As discussed above, defendants may not be held liable in § 1983 actions for negligence[7] or because their subordinates or co-workers violated the constitution. I therefore dismiss this portion of Count Four without prejudice.

**E. Count Five**

Count Five alleges the following: On February 21, 2020, correctional officer Johnson, assigned to legal mail delivery, delivered Plaintiff a letter from his defense counsel. ECF No. 1-1 at 30. The letter had been mailed on February 4, 2020 and correctional officer Johnson withheld

---

[7] In addition, Plaintiff may not bring claims for negligence against any of the defendants in this action. Any state tort claims against these defendants must be brought in state court.

the legal mail for approximately 17 days, in direct violation of an administrative regulation. The

failure to deliver Plaintiff's legal mail influenced Plaintiff's ability to contact his lawyer and

satisfy a judge's order to timely comply with an order. As a result of correctional officer

Johnson's failure to provide the legal mail within the 24-hour requirement, Plaintiff was unable

to properly research and write a response. This was "made worse" by the fact that Plaintiff could

not get an appointment with the law library.

Plaintiff filed an informal grievance. Defendant Alcock denied the grievance and told

Plaintiff that correctional officer Johnson had stated that he delivered the mail when HDSP

received it from the Post Office. Plaintiff filed a first level grievance. Warden Johnson denied

the grievance and stated that he could not determine when the prison received the mail because

there was no postmark or date on the mail. Warden Johnson stated that the officer would receive

training to ensure that he understood and complied with departmental policy and properly

processed incoming mail. Plaintiff filed a second level grievance and then another second level

grievance, which was denied by Piccinini. Plaintiff asserts that each of the defendants has a duty

to ensure that Plaintiff's legal mail was delivered within 24 hours and that they took such actions

to ensure such delays do not occur again, but delays do continue to occur.

Plaintiff concludes that defendants violated his right to access the court and communicate

with his counsel by failing to provide Plaintiff with his legal mail in a reasonable time.

### 1. *Access to the Courts Claim*[8]

Plaintiff fails to state a colorable access to the courts claim. As an initial matter, Plaintiff

has not alleged facts sufficient to state an underlying non-frivolous criminal, habeas, or civil

---

[8] For a discussion of the relevant law concerning access to the courts, *see* Section II.C supra.

rights claim. He therefore necessarily fails to state a colorable access to the courts claim. Plaintiff also has not alleged facts sufficient to show that, *because* a piece of mail was delayed in January of 2020 and *because* he was not able to get an appointment with the law library or speak to his attorney, he suffered a specified injury to any such claim. Plaintiff alleges that he had an attorney representing him. Plaintiff does not allege facts sufficient to show that a delay in the mail prevented his attorney from filing documents with the court in compliance with the deadline.[9]

Plaintiff also has not alleged facts sufficient to show any other kind of injury resulting from the January 2020 delay in the delivery of mail or from his inability to obtain a law library appointment[10] or speak to counsel. Nor has Plaintiff alleged facts sufficient to show what remedy he lost because of his inability to make a law library appointment and what remedy is currently available to him only through this access to the courts claim.

I therefore dismiss the access to the courts claims without prejudice. Although it appears to be very unlikely that Plaintiff can state a colorable access to the courts claim, it is not yet clear that it is impossible. I therefore will give Plaintiff leave to amend this claim. If Plaintiff chooses to amend this claim, he must allege *facts* sufficient to show that a particular defendant engaged in specified conduct that *caused* a particular injury to a non-frivolous criminal, habeas, or civil rights claim. This necessarily means including a short and plain statement showing that Plaintiff was entitled to relief on that underlying claim. He also must allege facts sufficient to show what remedy he lost as a result of the particular defendant's conduct and what remedy is currently

---

[9] In fact, it appears that his attorney met the deadline and filed a document signed by Cardenas-Ornelas. *See* 3:17-cv-00461-MMD-CLB, ECF No. 54.

[10] Plaintiff had an attorney who would have access to research resources and whose job it is to know and research applicable law. It therefore is not clear how Plaintiff's inability to make a law library appointment caused any injury.

available only through the access to the courts claim. Conclusory and collective allegations will not be sufficient.

### 2. *First Amendment – Interference with Mail*

Generally, prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). If a plaintiff states a colorable claim for interference with incoming mail, the court analyzes the prison regulations and practices concerning incoming mail under the factors outlined in *Turner*, 482 U.S. at 89. *See Thornburgh v. Abbott*, 490 U.S. 401, 411-13 (1989).

Liberally construed, the complaint alleges that correctional officer Johnson deliberately interfered with the delivery of Plaintiff's mail in January of 2020. For purposes of screening, this is sufficient to state a colorable First Amendment claim for interference with the mail. Therefore, this First Amendment claim for interference with the mail may proceed against correctional officer Johnson.

However, Plaintiff has not alleged facts sufficient to show that any other defendant interfered with his mail. A defendant's denial of a grievance after the fact is not sufficient to allege that the defendant caused the constitutional injury and is liable. And as discussed above, a defendant may not be held liable merely because of his supervisory position and the violations committed by that defendant's subordinates. Therefore, to the extent Plaintiff is attempting to state a First Amendment claim against anyone other than correctional officer Johnson, those claims are dismissed without prejudice.

### F. Count Six

Count Six alleges the following: On March 18, 2020, Johnson, Piccinini, Daniels, Struck, Owens, and Portello determined that inmates at HDSP would be on lockdown, which meant that

prisoners would be confined to their cells unless they were at work. ECF No. 1-1 at 33. During this lockdown, "the defendants" deprived Plaintiff of all access to the law library, including the proper and required means for sending out "legal mail," which requires that "legal mail" be forwarded through the library. Plaintiff has been required to send out "legal mail" to be copied and has had to send it out through regular mail because he had no access to the law library.[11]

Defendants Daniels, Wickham, Warden Johnson, Piccinini, Struck, Owens, Portello, and Graham have each been put on notice verbally or in writing that Plaintiff's ability to log, mail, and track outgoing legal mail is being hindered by Plaintiff's inability to utilize the law library to mail the materials out and each of them took no action to correct the situation. These same defendants then "knowingly deny the Plaintiff access to legal calls." During the lockdown periods that have occurred since March 18, 2020, Plaintiff has wanted to contact his lawyer regarding grievance and "other issues" that are time sensitive, including getting legal advice and guidance concerning the facts surrounding this case. Plaintiff required phone access because he has only five days in which to respond to a grievance so mail would not be an option. Defendant Brightwell denied Plaintiff access to the phone on at least five different occasions because Warden Johnson prohibited phone use and ordered that inmates be permitted only to take showers. Plaintiff spoke to Owens and Portello regarding the need to use the phone to make "legal calls." Both of these defendants stated that correctional officers are supposed to allow inmates to make "legal calls" and that they would talk to the unit officers to ensure that Plaintiff and other inmates were able to make "legal calls." However, neither of these defendants spoke

---

[11] Plaintiff also alleges that one such attempt resulted in the loss of the complaint in this action, requiring a new handwritten complaint and additional postage. This allegation and claim are duplicative of a claim in Count Three so I will not address them in connection with Count Six.

to unit officers about this issue and Brightwell continued to deny Plaintiff access to the phone to make legal calls. Plaintiff attempted to resolve the issue by contacting Warden Johnson, who did not respond. During this time, inmates in General Population, administrative and disciplinary segregation, and intake were being given access to phones to make phone calls, "amounting to Due Process and equal protection violations."

Plaintiff asserts that he has a First Amendment[12] right to correspond with his lawyer and that this right was denied when he was unable to attach postage to his legal mail and unable to utilize a brass slip or access the law library to send out his confidential legal mail. Plaintiff concludes that Daniels, Wickham, Warden Johnson, Piccinini, Struck, and Portello caused the deprivation of Plaintiff's "constitutional rights" when they designed and implemented a program that denies inmates access to the library and phone. Based on these allegations, Plaintiff asserts that his First, Fifth, and Fourteenth Amendment rights and "all applicable Nevada state constitutional rights" have been violated.

### 1. *Fifth Amendment Claim*

The Fifth Amendment's Due Process Clause applies to the federal government, not the States, while the Fourteenth Amendment's Due Process Clause applies to the states. *See Castillo v. McFadden,* 399 F.3d 993, 1002 n.5 (9th Cir. 2005). Plaintiff alleges conduct by state employees, not federal employees. The Fifth Amendment therefore does not apply, so I dismiss the Fifth Amendment claims with prejudice as amendment would be futile.

////

---

[12] Plaintiff does not have a right to counsel for civil matters and cases such as grievances, habeas petitions, and civil rights cases. *Pennsylvania v. Finley*, 481 U.S. 551 (1987). He does not appear to be invoking a right to counsel here, but instead appears to be invoking a First Amendment right to communicate with people, including through phone calls.

### 2. Fourteenth Amendment – Due Process

It is not clear what Plaintiff's basis is for invoking the Fourteenth Amendment's Due Process Clause. It may be that Plaintiff is attempting to state an access to the courts claim. For a discussion of the relevant law regarding access to the courts claims, *see* Section II.C supra.

Plaintiff fails to state a colorable access to the courts claim. Plaintiff has not alleged facts that could show an injury to a non-frivolous criminal appeal, habeas petition, or civil rights action. Plaintiff also has not alleged a lost remedy in such an action and has not alleged a currently available remedy in the access to the courts claim that is unique to an access to the courts claim. Therefore, to the extent Plaintiff is attempting to state an access to the courts claim under either the United States Constitution or the Nevada Constitution, the claims are dismissed without prejudice and with leave to amend. Plaintiff may not duplicate claims from other counts.

### 3. First Amendment Claim – Phone calls

Prisoners have a First Amendment right to telephone access subject to reasonable security limitations. *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986). If the limitations on access are reasonable, there is no First Amendment violation. *Id.* A prisoner does not have the right to unfettered telephone access or the right to make a telephone call anytime he wishes. *Id.*; *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *opinion amended on denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998).

Liberally construed, the complaint alleges facts suggesting that Daniels, Wickham, Warden Johnson, Piccinini, Struck, Portello, Brightwell, Owens and Portello unnecessarily denied Plaintiff access to the phone for an extensive period of time. For purposes of screening, this is sufficient to state a colorable First Amendment claim against Daniels, Wickham, Warden

Johnson, Piccinini, Struck, Portello, Brightwell, Owens and Portello.  This claim may proceed against those defendants.

Article 1, Section 9 of the Nevada Constitution provides free speech protections that are coextensive with the First Amendment to the United States Constitution. *S.O.C., Inc. v. Mirage Casino–Hotel*, 117 Nev. 403, 415–16, 23 P.3d 243, 250–51 (2001).  Therefore, the state constitutional free speech claim based on the alleged denial of phone calls may proceed against Daniels, Wickham, Warden Johnson, Piccinini, Struck, Portello, Brightwell, Owens and Portello.

### 4. *Legal Mail Claim*

It is not clear, but Plaintiff may be trying to allege that the defendants looked at his "legal mail."  Documents to or from the courts, as contrasted to mail containing privileged communications from a prisoner's lawyer, is not considered legal mail for constitutional purposes. *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998).  Furthermore, prison officials need not treat mail sent between prisoners and government agencies, officials, and non-profit organizations as legal mail for constitutional purposes, and such mail may be opened and inspected outside an inmate's presence. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *Blaisdell v. Dep't of Pub. Safety*, No. CIV. 14-00433 JMS, 2014 WL 5581032, at *3-4 (D. Haw. Oct. 31, 2014); *Kaufman v. McCaughtry*, 419 F.3d 678, 685–86 (7th Cir.2005) (mail from Department of Justice, nonprofit civil liberties organization, and other legally oriented entities is not legal mail when inmate was not represented by attorney with organization).  Prison officials may, consistent with the First Amendment, require (1) that mail from attorneys be identified as such and (2) open such correspondence in the presence of the prisoner for visual inspection. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974).  It is irrelevant whether a *prison* defines mail from

government agencies, officials, courts, or other entities as "legal mail"; a prison may set a higher standard than that required by the First Amendment but doing so does not transform a violation of a prison policy into a constitutional claim. *Blaisdell,* 2014 WL 5581032 at *5–6 (D. Haw. Oct. 31, 2014).

Thus, for purposes of screening, to state a colorable constitutional claim for the improper examination of legal mail, a plaintiff must not only allege facts sufficient to show that a specified defendant opened and examined the plaintiff's mail outside of the plaintiff's presence but also must allege facts sufficient to show that this mail was labeled as privileged legal mail <u>and</u> must allege facts sufficient to show that the mail constituted legal mail for *constitutional* purposes. *Hayes*, 849 F.3d at 1211. If the plaintiff states a colorable claim, the defendant then will have an opportunity to show that its legal mail policy or conduct is reasonably related to legitimate penological interests. *Id.* at 1213.

Here, Plaintiff has not alleged facts sufficient to show that any particular defendant opened and examined outside of Plaintiff's presence any mail that constituted legal mail for constitutional purposes and was labeled as privileged legal mail. Plaintiff therefore fails to state a colorable claim with regard to legal mail and I dismiss these claims. If Plaintiff chooses to amend these claims, for each piece of mail Plaintiff must allege facts sufficient to show that the mail constituted legal mail for constitutional purposes, that the mail was identified as privileged legal mail, and that a particular defendant nevertheless opened and examined that mail.

### 5. Fourteenth Amendment Equal Protection

For a discussion of the applicable equal protection law, *see* Section II.A.3 supra.

Liberally construed, the complaint states a colorable equal protection claim against Warden Johnson. The complaint alleges that Warden Johnson did not let Plaintiff make phone

calls but Warden Johnson treated HDSP inmates in the general population, administrative segregation, and disciplinary segregation differently by permitting them to exercise their First Amendment right to make phone calls. This is sufficient at the screening to state claims against Warden Johnson for violations of the federal and state guarantees of equal protection. These claims therefore may proceed against Warden Johnson.

### G. Leave to Amend

Plaintiff is granted leave to file an amended complaint to cure the deficiencies of the complaint outlined above. If Plaintiff chooses to file an amended complaint, he is advised that an amended complaint supersedes (replaces) the original complaint and, thus, the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Plaintiff should file the amended complaint on this court's approved prisoner civil rights form, and it must be entitled "First Amended Complaint." For each cause of action and each defendant, he must allege facts sufficient to show that the defendant violated his civil rights. Plaintiff may not amend the complaint to add unrelated claims against other defendants. Furthermore, an amended complaint does not include new claims based on events that have taken place since the original complaint was filed. If Plaintiff chooses to file an amended complaint curing the deficiencies outlined in this order, he must file the amended complaint **by June 11, 2021**. Any amended complaint will be screened in a separate order and that process will take many months.

If Plaintiff does not timely file an amended complaint, this action will proceed immediately on the following claims: the federal and state cruel and unusual punishment and equal protection claims in Count Two against Portello, Owens, Warden Johnson, Struck, and Piccinini; the portion of Count Four alleging an Eighth Amendment claim against Daniels, Warden Johnson, Piccinini, and Struck based on an alleged policy that requires officers to come to work after they have reported coming into contact with people who have COVID-19; the portion of Count Five alleging a First Amendment claim for interference with Plaintiff's mail against correctional officer Johnson; the federal and state free speech claims in Count Six against Daniels, Wickham, Warden Johnson, Piccinini, Struck, Portello, Brightwell, Owens, and Portello based on the alleged extended prohibition of all phone calls by Plaintiff; and the federal and state equal protection claims in Count Six against Warden Johnson based on denial of all phone calls.

Any amended complaint <u>must</u> comply with Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). And Rule 8(e) requires that "[e]ach averment of a pleading shall be simple, concise and direct." Fed. R. Civ. P. 8(e). A district court has the power to dismiss a complaint when a plaintiff fails to comply with Rules 8(a) and 8(e). *McHenry v. Renne,* 84 F.3d 1172, 1179 (9th Cir. 1996); *Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 673 (9th Cir. 1981). If the factual elements of a cause of action are not organized into a <u>short and plain</u> statement of the particular claim, dismissal for failure to satisfy Rule 8(a) is proper. *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 640 (9th Cir.1988); *see also Nevijel,* 651 F.2d at 674.

And under Rule 8, a plaintiff may <u>not</u> allege facts that are extraneous and not part of the factual basis for the particular constitutional claim. *See Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (recognizing that Rule 8 can be violated when the plaintiff says too much).

Although I have screened Plaintiff's complaint despite his non-compliance with Rule 8, **I explicitly warn Plaintiff that, if he violates Rule 8 in his amended complaint or any other time in the future, I may dismiss that complaint without further notice**.

## III. CONCLUSION

I therefore order that a decision on Plaintiff's application to proceed *in forma pauperis* (ECF No. 11) is deferred.

I further order the Clerk of the Court to file the Complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

I further order that Count One is dismissed without prejudice and with leave to amend.

I further order that the federal and state cruel and unusual punishment and equal protection claims in Count Two may proceed against Portello, Owens, Warden Johnson, Struck, and Piccinini.

I further order that Count Three is dismissed with prejudice, as amendment would be futile.

I further order that the portion of Count Four alleging an Eighth Amendment claim based on allegations that conduct by defendants resulted in other people violating Plaintiff's constitutional rights is dismissed with prejudice, as amendment would be futile.

I further order that the portion of Count Four alleging an Eighth Amendment claim based on an alleged policy that requires officers to come to work after they have reported coming into

contact with people who have COVID-19 may proceed against Daniels, Warden Johnson, Piccinini, and Struck.

I further order that the portion of Count Five alleging a First Amendment claim for interference with Plaintiff's mail may proceed against correctional officer Johnson.

I further order that the Fifth Amendment claims in Count Six are dismissed with prejudice, as amendment would be futile.

I further order that the federal and state free speech claims in Count Six based on the alleged extended prohibition of all phone calls by Plaintiff may proceed against Daniels, Wickham, Warden Johnson, Piccinini, Struck, Portello, Brightwell, Owens, and Portello.

I further order that the federal and state equal protection claims in Count Six based on denial of all phone calls may proceed against Warden Johnson.

I further order that all other claims in the complaint are dismissed without prejudice.

I further order that, if Plaintiff chooses to file an amended complaint curing the deficiencies outlined in this order, he shall file the amended complaint **by June 11, 2021**.

I further order the Clerk of the Court to send to Plaintiff the approved form for filing a § 1983 complaint and instructions for the same. If Plaintiff chooses to file an amended complaint, he should use the approved form and he must write the words "First Amended" above the words "Civil Rights Complaint" in the caption. I remind Plaintiff that if he files an amended complaint, the court will screen the amended complaint in a separate screening order. The screening process will take many months.

I further order that, if Plaintiff does not timely file an amended complaint, this action will proceed immediately on the following claims: the federal and state cruel and unusual punishment and equal protection claims in Count Two against Portello, Owens, Warden Johnson, Struck, and

Piccinini; the portion of Count Four alleging an Eighth Amendment claim against Daniels, Warden Johnson, Piccinini, and Struck based on an alleged policy that is requiring officers to come to work after they have reported coming into contact with people who have COVID-19; the portion of Count Five alleging a First Amendment claim for interference with Plaintiff's mail against correctional officer Johnson; the federal and state free speech claims in Count Six against Daniels, Wickham, Warden Johnson, Piccinini, Struck, Portello, Brightwell, Owens, and Portello based on the alleged extended prohibition of all phone calls by Plaintiff; and the federal and state equal protection claims in Count Six against Warden Johnson based on denial of all phone calls.

Dated: May 11, 2021

_____

U.S. District Judge